To the third case, Consolidated Coal v. OWCP. Ms. Introvia. Good morning, your honors. My name is Cheryl Introvia. I represent Consolidation Coal Company in this appeal that involves a claim for benefits under the Black Line Benefits Act. Well, we had quite a few issues that were brought up in this, and given the time constraints, unless there are any actual issues that you need to address right off the top, I'm going to start with the statutory interpretation, because I believe it's probably the most important in this. Prior to 2010, a quick history lesson, there used to be a 15-year presumption. It was taken out in 1981. After that, the miners had to prove that they had pneumoconiosis that arose out of their coal mine employment, that they were totally disabled from a respiratory impairment, and that that respiratory impairment was pneumoconiosis. They had four prongs that they had to prove. When the PPACA, also known as Obamacare, was put in in March, in Section 1556, they restarted up the 15-year presumption again. And when they did that, there weren't any rules for any of this. And essentially, what the 15-year presumption does is if you have worked in the coal mines underground for 15 years, or if you have substantially similar exposure to 15 years underground, and you establish evidence of a total disabling respiratory or pulmonary impairment, you are then given the presumption that you are totally disabled due to pneumoconiosis. So what was 1, 2, 3, and 4, you now only have 3. In the case before you, the gentleman, we don't have an issue with the time period. It's simply a matter of whether it's totally disabled due to a respiratory impairment. His pulmonary function testing, one qualified, one didn't. The one that was more recent was almost normal. So the PFTs were found to not be qualifying. The arterial blood gas testing, there were two tests for each one of the tests. And the resting test was fine. It was normal. And when Mr. Ross was exercised, the P02 value dropped. Typically, in a normal case, it goes the other way. So we obviously have a problem. We know there's something wrong here. And the Benefit Review Board case law that goes all the way back to the 1980s has always said that just because you have an arterial blood gas testing that qualifies, there is no presumption that it is a pulmonary impairment. And that is because arterial blood gas is addressed more than just pulmonary function. Obviously, pulmonary function tests are measuring pulmonary function. Arterial blood gas testing can show all sorts of other conditions. So those, the ALJ found, did qualify. And so we said, this one we're going to go with for the minor on that one, and we're not for the PFTs. He got down, in the first case, to the medical opinion evidence. Well, the medical opinion evidence based on 718204 says that you're looking for a medical opinion that's based on the evidence as to whether the pulmonary and respiratory condition is totally disabling. And he did that because two of the doctors, when they did this testing, he filed it in January 2012. The DOL exam was in February 2012. That was the bad PFTs with the bad exercise. Four months later, he's seen by Dr. Tudor, and the PFTs are normal. The ABGs are bad. Dr. Tudor says, this should not be dropping like this, given that we have such normal pulmonary function. At most, it was a minimal obstructive condition. So he did what was known as a 100% oxygen test. And the 100% oxygen test basically had the minor put on an oxygen mask, which then feeds the oxygen to the lungs, goes into the bloodstream, and when it comes back through the lungs, it should be at a value in excess of 600, because you're only breathing pure oxygen. It wasn't. It was 541, and Dr. Tudor said, this is evidence of a right to left cardiac shunt. Which, given Mr. Ross's previous condition of two heart attacks, triple bypass, an aortic valve replacement, and numerous cardiac catheterizations, was not a big surprise that it was a coronary issue. The ALJ looked at the evidence and said, Dr. Selby, Dr. Tudor did not find this to be a pulmonary impairment. They said it was cardiac. And Dr. Tazvez did. I find the opinions of Dr. Tudor and Dr. Selby to be more credible. Dr. Taz's report was minimal. I don't think we can invoke the 15 year presumption to say we'll do it to a pulmonary impairment. Claimant appealed it, got taken to the board, and before the board, the director argued that the ALJ was not allowed to consider the cause of the impairment prior to invocation of the 15 year presumption. Well, the statutory language is pretty clear. It says respiratory and pulmonary impairment. I mean, I don't know how you get around not determining if it is indeed a respiratory or pulmonary impairment if you're not looking at that before you invoke it. Because if you're not, given what the minor will receive from the presumption, which is I'm totally disabled due to pneumoconiosis, which is clearly a pulmonary condition, you can't then argue, well, he doesn't have pneumoconiosis because it's a cardiac condition. Because that issue has already been decided. The minute the ALJ says he has 15 years of employment and he is totally disabled from a respiratory condition, you cannot on rebuttal come back and say, well, he doesn't have a totally disabling respiratory impairment. It's cardiac. Because that piece of information had to be decided before the ALJ could invoke the 15 year presumption in the first place. And we got into a bit of an issue with this before the board because the case law that was put before the board in support of this was the Bounds case, which was cited by the parties, and Street v. Dominion. And they said, basically the case said, you know, you have to consider the arterial blood gas testing, which is true. You have to consider all of it. But what happened is in the Bounds case, or in the Street case, the first time it was in front of the board, the board said, you're going to have to look at this because there is no presumption of total disability just because the ABG qualifies. On appeal, they then came out and said, no, we're not going to address causation before we invoke the 15 year presumption. Okay. Then the Bound decision comes up there. And in the Bound decision, the VRB said, because these are so intertwined, you've got to. And then in the director's responsive brief, we got a third one, which was Caudill, which I was unaware of, so I appreciated that one being in there, which has the same decision as Street decision, but interestingly doesn't mention Street or Bounds in that case. So we're kind of in the middle of what are we supposed to be doing here? And I understand that causation itself is at the end. It's part of the rebuttal. I get that. But I think you have to narrow it to a respiratory or a pulmonary condition because if you're going to, based on their regulation under 305 to figure out total disability, if you look at the statement regarding the it says a physician exercising his opinion as to the causation of the impairment. I mean, it's right there. If this respiratory or pulmonary condition is what's the total disability. So when you get to rebuttal, it can't be because he had rheumatoid arthritis or he had a stroke or he had, there's all these other things that could be there. Because of what is presumed, it has to be a respiratory or pulmonary impairment. And in this case, the ALJ found on the first decision that it was cardiac and therefore it couldn't be invoked. We then got into the issue of whether the director could even file the brief, which I think that's been fairly well briefed and we're going to skip that one. The bigger concern was the fact that while the director is, we expect them to give some guidance on the law as long as it's consistent. Chevron allows that. If there's an ambiguity in the statute, I don't think it's ambiguous. I don't really think they should be given the deference. The problem we got into is that the director then addressed the evidence and they can have their criticisms of it, of the doctor's opinions. I mean, I do that. I mean, Mr. Allman would have done that. This is how it's done. The problem we get into is that the board adopted every single thing that the director said. Just ate it. Hook, line, and sinker. Reeled it in. Here we are. And then to add to that problem is the board's remand decision is nearly identical in the issues that it's complaining about back to the ALJ. And then the ALJ adopts every one of the director's evidentiary findings. Well, and that would be great, except that's the ALJ's job. He's supposed to view the evidence and decide what he finds to be credible, what should be given great weight, what should be given less weight. All of that is his job. And from what these briefs show and the decision from the BRB and the ALJ's decision, which there are literally portions of it that have identical language, we have completely taken away the ALJ's ability to review the case. I mean, and I appreciate the fact that y'all could sit up there and look at this and say, you know what? I think the director was right. I think I'd go with Dr. Tazbaz over Dr. Tudor. That's what I would want to do. I completely understand that. Or you can say, I think Dr. Tudor. But it doesn't matter because you're not the fact finders here. The board isn't the fact finder. The director's not the fact finder. The ALJ is. And what you see between the ALJ's first decision, the board's brief, or the, I'm sorry, the director's brief before the board, the board's decision, and the ALJ's second decision, they have taken all of his ability to make those decisions himself away. And I do find that to be a due process violation because the Administrative Procedure Act makes that his job. And so we have asked that in the event that you don't find that the statute requires him to find that it's pulmonary, which we think it should because the statute says that, that at a bare minimum the case would have to go back to him so he can have a fair view of the evidence. Because I don't see how you can do a 180 degree change on an opinion, on every opinion in the record, to have it be exactly what the board said based on what he previously put. So we are asking the court to do that. And unless there's any questions, I'm just going to sit down and reserve the rest of my time. Thank you. Mr. Alden. May it please the court, counsel. Your Honor, I am Ralph Ross's attorney. And I wanted to briefly talk about how important this 15 year rebuttable presumption is to coal miners applying for black lung benefits. And the statute couldn't be clearer on these points, but here's something, here's how these cases go. A miner goes to a respiratory disease clinic. He fills out a claim to apply for benefits, a DOL form. He's given a list of doctors to go see. He chooses one. He goes to that doctor. He has a 432B examination by that doctor. This was Annie Tazbaz in this case. I believe in Heron, Illinois. Dr. Tazbaz will sometimes just mark boxes, check boxes, write in four, five, or six word explanations what the cardiopulmonary diagnoses were and what the etiology of these conditions are, sign and date that. He does a pulmonary function test, arterial blood gas test, history, examination, chest x-ray. Submits that. The employer gets the opportunity to then have two of their physicians examine the miner and do all these same tests. But when their reports come back, they're 8, 10, 15 page, nicely typed out. There's quite, it looks impressive. There's a lot more evidence against the miner. So the statute that Robert Bird, through the Patient Protection and Affordable Care Act, inserted this 15 year presumption, and it allows a miner, and this language is very clear. In 20 CFR section 718.204.B.2.I. It says that a miner may prove totally disabling pulmonary respiratory condition by A or B or C. One of those is by qualifying arterial blood gas values. ALJ Henley agreed that Mr. Ross proved that. He had that. I don't think the employer disagrees with that. What the employer wants to do is put causation, rebuttal causation back on us to prove. Well, that's the bad old days when we lose most of our presumption forward. Presumption is that Mr. Ross's totally disabling pulmonary condition was caused by his coal mine employment. Then it becomes necessary for the employer's physicians to rebut that. And the Seventh Circuit case law is very clear. It's an uphill battle for them. Yes, it's hard. They're trying to get out from underneath it. That's all they're trying to do here. This is a very clear cut case. And the Dr. Tudor's opinion about the left-to-right heart shunt. He admits that the bubble test, echocardiogram test, was not done. That's the test of choice to prove such a thing. That wasn't done. That's a specious argument. Anything but coal dust causes this man's problem, according to Dr. Tudor. Well, that's just not the case. And then when it went back on remand. So ALJ Henley got it He did not invoke the 15-year presumption, even when he admittedly sees that Mr. Ross's proven total pulmonary disability should have got the 15-year presumption. And then gone to the causation. If the employer could disprove, there was black line. That's what was wrong. All those arguments were made by me to ALJ Henley. All those arguments were made by me to the BRB. The directors came in and chimed in and said the same thing. And so on remand, ALJ Henley got it right. And Dr. Tazbaz, this was unusual. They reopened the record on remand. That's not done that often. And Dr. Tazbaz got to talk now about Dr. Tudor and Dr. Selby's opinions. He got to refute this heart cardiac situation and show that there was no validity to that argument. How did he do that? Because he pointed out, and Dr. Tudor agrees, that the bubble echocardio test was the way to prove Dr. Tudor's theory of this shunt. So they all agree that that was not done in this case. So to say that's what he has is sort of stupid. How does the echocardiogram show that? It shows blood flow. Does it look echocardiogram? Your Honor, you just took me way out of my depth on that. I don't know that. No sweat. I'm sorry. No sweat. So that's what I'm going to sit down. Thank you. Unless there's more questions. Thank you, Mr. Alderman. Ms. Hurley. May it please the Court, my name is Sarah Hurley and I represent the Director, Office of Workers' Compensation Programs, United States Department of Labor. And I want to start out by agreeing completely with Ms. Antrovia that in order to invoke the 15-year presumption, the minor does have to prove a totally disabling respiratory and pulmonary impairment. And he does that by the evidence that Ms. Antrovia already described, pulmonary function studies, which in this case actually yielded mixed results, by blood gas studies that yielded mixed results, but on balance were qualifying for a totally disabling respiratory and pulmonary impairment. How does the blood gas study show a pulmonary impairment? It measures the gas exchange in the blood, whether oxygen is being supplied to the red blood cells. Oh yes, the counsel did mention that. Thank you. Good. And the other two methods are evidence of core pulmonality, which wasn't in this case. And then the final method is by recent medical opinions. And in this case we had the opinions of Dr. Taspas, who was our doctor. He was the doctor that examined Mr. Ross. And under the Act, we're obligated to give a minor a complete pulmonary examination. And that's what Dr. Taspas did in this case. And he supplied a very thorough 40-page opinion in this case. And he conducted an EKG and a stress test in addition to the pulmonary function and blood gas studies. And he concluded that this minor was totally disabled due to legal and clinical pneumoconiosis. In fact, the minor's x-rays, Mr. Ross's x-rays, are mixed, the results of them. And Dr. Taspas concluded that Mr. Ross has both clinical and legal pneumoconiosis. But the employer's doctors felt that although the minor had disabling hypoxemia, as shown on the blood gas studies, that this condition was due, they posited, that it was most likely due to a heart condition. So when the ALJ was weighing this evidence to determine whether the 15-year presumption was invoked, he looked at the qualifying blood gas studies. And he said, well, they indicate disability, but I'm going with Dr. Tudor's opinion that says that this is a cardiac impairment. We agreed with the claimant that this was not right. When you look at the invocation of the presumption, you look to whether the impairment exists. And in his opinion, Dr. Tudor, he described a pulmonary condition. He said that the minor had his diffusing capacity was reduced, he had disabling hypoxemia, and his alveolar gas exchange was not normal. In addition, he also looked at the pulmonary function studies, and he said that they, at first, he said they indicated a moderate obstructive impairment. Later, in the conclusion of his opinion, he said minimal. But he didn't describe why he downplayed it in his medical conclusion. So when we looked at the ALJ's decision, it looked like the ALJ almost put off determining whether actually a totally disabling respiratory and pulmonary impairment existed. He just dismissed the evidence and said, I'm going with Tudor and Selby, who said this impairment is due to a cardiac condition, and therefore, the 15-year presumption is not invoked. That wasn't right because, as claimant points out, if a minor, this minor, had 30 years of coal mine employment, he's entitled, and there was never any question that it was underground, either underground or substantially similar coal mine employment that exposed him to a lot of dust. If the only thing he needed to do to get the benefit of the presumption was to prove a totally disabling respiratory and pulmonary impairment, the cause is not germane at that invocation inquiry. So whether, with Dr. Tudor and described the minor's impairment, it clearly implicated a respiratory disease. So a claimant and the director felt that this minor should have been given the benefit of the 15-year presumption invocation. And then on rebuttal, the ALJ was to look to see whether Dr. Tudor's opinion that it was due to a heart disease was a valid, credible diagnosis sufficient to rebut the presumption. And that's what we wanted a remand for. The case went back. The board agreed with the claimant and the director on this point. The case went back, and on remand, the ALJ reopened the record. The employer's doctors were allowed to supplement their opinions, and I can see no due process violation there. They were allowed to supplement and make new argument. The second decision by the ALJ awarded benefits, and the board affirmed. They found that the invocation was evoked. They looked at Dr. Selby's evidence on rebuttal and found that it just simply wasn't credible because, number one, he never performed the bubble study, which is the test of choice to confirm a heart shunt. And also, the opinion was at odds with the medical records, which this man has had a triple bypass, and there was never any indication that he had a shunt in the minor's voluminous medical records. So they just simply felt that Dr. Titor was insufficient to rebut the presumption, and that Mr. Ross is entitled benefits, and we agree with this result. All right. Are there no further questions? Thank you. Thank you, Ms. Harlow. Thank you. Ms. Entralia? Shaya? Your Honor, with regard to Mr. Allman's comment, the DOL exam is the freebie, and while Consolidation Coal Company had two experts, Dr. Titor and Dr. Selby, perform exams and perform record reviews, the claimant has also provided that opportunity. Under 725414, there are medical evidentiary limitations, and his limitations are the same as mine. The DOL is a freebie for everybody, so depending on what the physician says, they're still entitled to two experts. It seemed to me that he was making it sound that we had something they didn't. The other thing to keep in mind is under 718204, the line in that says, absent contrary probative evidence. In this case, there was absent probative contrary evidence. The ABGs are not presumed to be a respiratory impairment. That goes back to case law from the BRB shedlock, the Bethlehem Mines Corp., 1986, affirmed on reconsideration. That has been the law for a very long time, that qualifying ABGs do not presume that it is a respiratory impairment. What the director and the claimant are asking you to do is to make that one more part of the 15-year presumption, but it's not. The 15-year presumption says, this is how you can prove it, but it must be respiratory or pulmonary. What they are saying is, if it's cardiac or skeletal, it's okay, we'll get it down the end of the road, but we don't. You can see that by how this evidence was analyzed in this matter. While they say there's no due process violation, if there's a preordained outcome on remand, which clearly there was, because while the director says, well, the judge didn't think that it was like that, no, the board didn't think it was like that, because the director told them it wasn't like that. None of this was the freestanding opinion of the ALJ, and we would ask that these decisions be vacated, that the original ALJ's decision be reinstated, as it was supported by the evidence, contrary to what the director just said. There was plenty of medical stuff in there showing why Dr. Tudor and Dr. Selby's opinion was supported. And for the record, Dr. Tudor originally said that the obstruction condition was minimal, or it was mild, and changed it to minimal, not moderate, as suggested by the director. And unless there's any other questions. Thank you. Thank you, Your Honor. Thank you to all counsel. The case is taken under advisement.